IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIVERSITY ACCOUNTING SERVICE, LLC**,<br><br>    Plaintiff,<br><br>v.<br><br>**ETHAN SCHULTON and SCHOLARCHIP CARD, LLC**,<br><br>    Defendants, | Case No. 3:18-cv-1486-SI<br><br>**OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS** |

Allyson B. Baker, Sameer P. Sheikh, Erin Z. Cass, and Michael J. Marusak, VENABLE LLP, 600 Massachusetts Avenue, NW, Washington, DC 20001; Ciaran P. A. Connelly, BALL JANIK LLP, 101 SW Main Street, Suite 1100, Portland, OR 97204. Of Attorneys for Plaintiff.

Scott R. Ast, SCHARNHORST AST KENNARD GRIFFIN PC, 1100 Walnut Street, Suite 1950, Kansas City, MO 64106; Stephen P. Yoshida and Michael J. Farrell, MB LAW GROUP LLP, 117 Taylor Street, Suite 200, Portland, OR 97204. Of Attorneys for Defendant Ethan Schulton.

Stephen Nakamura, MERLE BROWN & NAKAMURA PC, 90 Broad Street, Suite 2201, New York, NY 10004; John C. Rothermich, K&L GATES LLP, One SW Columbia Street, Suite 1900, Portland, OR 97258. Of Attorneys for Defendant ScholarChip Card, LLC.

**Michael H. Simon, District Judge.**

Plaintiff University Accounting Service, LLC ("UAS") brings this lawsuit against Defendants ScholarChip Card, LLC ("ScholarChip") and Ethan Schulton ("Schulton"), who previously worked for ScholarChip. Before the Court is UAS's motion against Schulton for case-dispositive sanctions or, in the alternative, lesser sanctions. UAS asserts that Schulton destroyed relevant electronically stored information with the intent of depriving UAS of the use of that evidence in this lawsuit. For the reasons that follow, the Court denies Plaintiff's motion for case-dispositive sanctions but grants Plaintiff's alternative motion for lesser sanctions.

## STANDARDS

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Rule 37(e) of the Federal Rules of Civil Procedure sets forth the standards and consequences if a party in litigation destroys or fails to preserve relevant electronically stored information. That rule provides:

> FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;

> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The current text of Rule 37(e) was adopted in 2015 to replace the 2006 version of that rule. As explained by the Rules Advisory Committee in 2015:

> Subdivision (e)(2) requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation. This finding may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial. If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation. If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.
>
> Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice.
>
> Courts should exercise caution, however, in using the measures specified in (e)(2). Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.

Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.

# BACKGROUND

## A. The Parties and Their Lawsuits

UAS is a student loan servicing company and a wholly owned subsidiary of Transworld Systems, Inc. ("TSI"), a debt collection and receivables management company. The clients or customers of UAS are lenders who provide student loans. UAS assists its customers by documenting when student loan payments are made to lenders, ensuring that loan balances are accurately tracked, and maintaining loan documents for retrieval and later use.

ScholarChip is a technology company that provides software development and data security services. Dr. Maged Atiya ("Atiya") founded ScholarChip in 2000 and is currently its Chief Technology Officer ("CTO"). Schulton worked for ScholarChip from 2003 through the end of 2017, when he voluntarily resigned to pursue other activities. At the time of his resignation, Schulton was one of the leading software developers at ScholarChip.

In May 2006, UAS entered into three contracts with ScholarChip. They are referred to as: (1) the Master Terms and Conditions ("MTC"); (2) the Software Development Agreement ("SDA"); and (3) the Hosting Support Services Agreement ("HSSA") (collectively, the "Agreements"). Through the Agreements, UAS hired ScholarChip to, among other things, create for UAS a unique, proprietary software platform ("eUAS Software") and to host data provided to or accessed by ScholarChip for the benefit of UAS and its customers ("Client Data"). Client Data is described in the MTC as also "including but not limited to all reports provided by ScholarChip" to UAS concerning services such as hosting, maintenance, and support services. The MTC also includes confidentiality provisions requiring, among other things, that ScholarChip "shall take appropriate action, by instruction to or agreement with its employees," to maintain the confidentiality of confidential information including all information defined under the MTC as "Confidential Information."

Under the MTC, UAS's Confidential Information includes "customer lists, customer and supplier identities and characteristics, agreements, marketing knowledge and information, sales figures, pricing information, marketing plans and business plans." MTC § 8.2. ScholarChip must use the Confidential Information or Client Data solely for the purpose of performing its obligations under the Agreements. MTC § 8.3. To the extent ScholarChip discloses Confidential Information to "persons in its organization who have a need to know for purposes of performing the [Agreements] or for a purpose consistent with the terms of the [Agreements]," such disclosure must be "then only pursuant to an agreement that such persons will maintain the Confidential Information or Client Data in confidence and will not use or disclose to others except in accordance with this paragraph." MTC § 8.3.

According to UAS, Schulton was the lead software developer and chief architect of the eUAS Software. His responsibilities included the coding, development, and maintenance of the eUAS Software, as well as ensuring the security and safe keeping of UAS's Client Data. Schulton was UAS's primary contact at ScholarChip for all technical needs and questions or requests relating to the eUAS Software. In addition, Schulton was responsible for providing "webinars," or personalized tutorial sessions, to UAS's customers to educate them on eUAS Software features, provide technical support, and answer customer-specific questions. UAS entrusted ScholarChip, and its employees, including Schulton, with access to UAS's Client Data and UAS's Confidential Information, including (according to UAS) customer lists, customer preferences, and other customer-specific intelligence that Schulton was exposed to while providing eUAS webinars.

Also according to UAS, in February 2016, ScholarChip told UAS that UAS would have to pay substantially higher fees if it wanted to continue using the eUAS Software platform.

Otherwise, UAS's access would be terminated. In March 2016, Schulton recognized the possibility that UAS might bring a lawsuit. On March 29, 2016, Schulton sent an email to ScholarChip's founder and CTO Atiya stating, among other things: "To ensure UAS/TSI has no fuel for a lawsuit, should we provide them with the source code now?" During the following month, April 2016, Schulton sent an email to his legal counsel, and copied others within ScholarChip, about forming a new legal entity, "Online Financial Management Technologies, LLC."

In February 2017, UAS met with Atiya, and possibly others at ScholarChip as well, and told him that UAS had identified an alternative platform and intended to move, or migrate, its Client Data away from ScholarChip. ScholarChip then demanded from UAS a significant increase in fees for allowing UAS to migrate its Client Data away from ScholarChip. In March 2017, Schulton declined a request from UAS to perform certain software development work relating to eUAS. Schulton told UAS that the requested modifications and other work were no longer available to UAS. In June 2017, ScholarChip limited UAS's access to the eUAS Software by terminating UAS's access to a development and test environment that UAS contends was necessary for UAS to test features and ensure the eUAS system was functioning properly for UAS's customers.

Also in June 2017, UAS filed a lawsuit against ScholarChip in federal court in the Eastern District of Wisconsin. That court dismissed the lawsuit in October 2017 for lack of personal jurisdiction. Shortly thereafter, ScholarChip filed a complaint in October 2017 against UAS in federal court in the Eastern District of New York. In that lawsuit, ScholarChip alleged that UAS failed to make certain payments for work that ScholarChip asserts it performed. UAS disputed ScholarChip's allegations and asserted counterclaims. That litigation is continuing.

On July 30, 2018, approximately seven months after Schulton voluntarily left ScholarChip's employment, Schulton sent an email both to UAS and Atiya. In that email, Schulton announced his intent to create a loan servicing system that would compete directly with UAS. He further said that he would create the system based on knowledge acquired during his 15 years at ScholarChip. Schulton added that he would be communicating with and soliciting business from UAS's customers that he learned about through his work at ScholarChip for UAS. Schulton explicitly named three such customers and individuals on UAS's customer list who served as UAS's direct point of contact at each of the customer companies. The subject line of Schulton's July 30th email was "some needed competition."

In August 2018, UAS filed this lawsuit in the District of Oregon against Schulton and ScholarChip, alleging three claims. As its first claim, UAS alleges that ScholarChip breached its contractual obligations based on Schulton allegedly taking, using, and disclosing UAS's Confidential Information and the eUAS software. UAS further alleges that ScholarChip failed to institute or enforce a non-disclosure and confidentiality agreement with Schulton sufficient to protect UAS's Confidential Information. UAS also alleges that ScholarChip breached its contractual obligations by assisting, facilitating, or encouraging Schulton's improper actions. As its second claim, UAS alleges that both ScholarChip and Schulton violated Oregon's Uniform Trade Secrets Act, Or. Rev. Stat. § 646.461, *et seq*. As its third claim, UAS alleges against both ScholarChip and Schulton intentional interference with economic relations, specifically UAS's relationships with its own customers for loan servicing.

**B. Schulton's Spoliation of Evidence**

As previously noted, UAS sued ScholarChip in federal court in Wisconsin in June 2017. On September 1, 2017, Schulton sent an email to Atiya, stating that Schulton wanted to leave ScholarChip by the end December 2017. On September 6, 2017, Schulton sent another email to

Atiya, following up on their conversation from earlier that day and stating that Schulton anticipated becoming either "an entrepreneur or a freelancer." As Schulton stated in his deposition, also in September 2017, he used a "mechanism called Take Out" to export his entire ScholarChip e-mail account, which included all of its contents dating back to 2014, to Schulton's personal cloud storage account, known as a "One Drive" account. He also saved a copy of his ScholarChip email account on his personal computer. According to Schulton, "that extraction process took several days, and it produced an Inbox file, a very, very large Inbox file."

During his final months as an employee of ScholarChip in the fall of 2017, Schulton conducted recorded webinars directly with UAS clients, during which no UAS representative was in attendance. During these webinars, Schulton testified, UAS's clients described "the functionality they want built" and "we would demo the functionality that we were building for clients." As Schulton explained, "[i]t was a venue to both demo and gain information about what [UAS's] clients needed." Schulton saved electronic copies of these webinars to his personal computer, which he took with him and kept after he left ScholarChip's employment.

As also previously noted, ScholarChip sued UAS in federal court in New York in October 2017, and UAS asserted counterclaims. In February and March 2018, ScholarChip and UAS served third-party deposition and document subpoenas in connection with the New York litigation. On March 7, 2018, Schulton accepted service of a deposition and document subpoena. That subpoena called for production of responsive documents and things, including "all DOCUMENTS and ESI in YOUR possession, custody or control, irrespective of their physical location or whether such DOCUMENTS or ESI or other materials are possessed directly by YOU, YOUR attorneys, agents, employees, representatives, or investigators." The requests for

production demanded communications, documents, and things pertaining to the eUAS Software and UAS's Client Data. On July 30, 2018, Schulton responded:

> I left ScholarChip with nothing but the knowledge gained over 15 years of employment. To use definitions from my recent document subpoena, I have no "CLIENT DATA," "DELIVERABLES," "SOFTWARE," or "WORK PRODUCT."

During his deposition, taken in October 2018, Schulton admitted that shortly after accepting service of a document subpoena on March 7, 2018, he destroyed on March 11 responsive evidence located on his personal computer and in his personal cloud storage account. As Schulton explained in his deposition:

> In March, a couple of days after I was provided the subpoena, the document subpoena reminded me that I had downloaded, in September, a dump of my ScholarChip e-mail, that I had extracted per Maged's [Atiya's] request, for document discovery related to the UAS versus ScholarChip case in Wisconsin.
>
> \* \* \*
>
> At any rate, on March 11th, after the subpoena had been issued, having realized that I had a dump of my ScholarChip e-mail on my laptop, and this was the second instance of ScholarChip data that I found on my laptop, and wanting to destroy any access to that data so that I could legitimately say I have no access to this e-mail, I initiated a reinstallation of the operating system.
>
> To be specific, I used what appears to be called, in Windows 10, a restore, which reverts the laptop back to the factory defined image. And it must do some type of obfuscation or shredding of the personal files that remain on the laptop.
>
> So when one initiates a delete, it simply deletes a pointer or reference to that file in the directory structure. The actual raw data remains on disk, and utilities can be used to extract that data.
>
> So in shredding the remainder of the personal files on disk, I could guarantee myself that I had no additional access to that e-mail.
>
> Now, I recognize fully that was in violation of the subpoena, but I -- I reasoned at the time that ScholarChip already had the e-mail,

> and deletion was the safest path forward. There was no reason to return the e-mail to ScholarChip, because they already had it.
>
> * * *
>
> At any rate, I thought I got rid of the e-mail, but there was an Inbox file on my One Drive that still essentially had the e-mail. And I didn't discover the existence of that file until April 9th.
>
> When I discovered the existence of that file on April 9th, I deleted and initiated a second restore on my computer, again with the rationale that I wanted to shred the existence of that Inbox file. Being a cloud account, it was synchronizing with my laptop, so I didn't realize it actually yanked the Inbox file back down and placed it on my laptop in the background via synchronization process.
>
> But at any rate, I felt confident on April 9th that I no longer had any ScholarChip data. That turned out to be false. The day before my TRO hearing, I -- because of the stress of the lawsuit, it ups the -- it ups the –
>
> I decided to do another search and walked, again, directory by directory through my cloud accounts. What I checked that time was my Dropbox account, and that's where I found the -- I believe it was a -- I found the file called 2017-01, I don't know what the – so essentially January 2017. I don't know the precise date that the file was taken.
>
> The name of the file was Private Client List, and I can't tell you what the extension was. My best conjecture is it's a PNG file, a screen shot.
>
> In the TRO hearing [in the federal litigation in Oregon] I referred to the contents of that file. And although I never opened the file, I deleted the file as fast as I could, because I was petrified at its existence, because it's exactly the type of damning information that UAS wants to catch me with. The contents of the file, I believe, came from a query parameter on the management site. The query parameter --

ECF 130-1 (Schulton Deposition).

Thus, among other things, the day before the TRO hearing held in this case on August 22, 2018, Schulton located and deleted the file known as UAS's "Private Client List," which listed

UAS's clients in descending order by ScholarChip revenue. The next day, during the TRO hearing, Schulton testified under oath as follows:

> A. I discovered yesterday morning that I did have a list of clients in descending order by ScholarChip revenue on a – on a – on my Dropbox account that I had forgotten about. That is all I'm aware that I took. I immediately deleted it. It was tracking ScholarChip clients by revenue so we knew how to prioritize development. I overlooked it in the early months of this year.
>
> Q. When you left ScholarChip, did you take any code or information concerning the system?
>
> A. No.

ECF 130-2. Although Schulton disclosed at the TRO hearing that he had taken this Private Client List of UAS's customers ranked by revenue, Schulton failed to inform the Court that when he left ScholarChip, he also had taken with him numerous recorded webinars conducted with UAS's clients and at least three years' worth of emails from his time at ScholarChip.

During discovery in this case, UAS requested from ScholarChip "documents relating to the Private Client List and Schulton's taking and destruction of his entire ScholarChip email inbox." According to UAS, ScholarChip's counsel represented that ScholarChip had searched for the documents and "could not locate any documents." ECF 157 (Second Baker Decl.), ¶ 12. UAS then moved to compel. In response, ScholarChip represented: "The fact is that ScholarChip still is uncertain what the 'private client list' that Mr. Schulton deleted actually was, despite its good faith effort to determine the 'query' about which Mr. Schulton testified in his deposition." ECF 134 at 5. Thus, the Private Client List cannot be restored or replaced through additional discovery.

Regarding Schulton's copying of ScholarChip's emails to his personal computer or cloud account before he left ScholarChip, ScholarChip states that it "has conducted a reasonable search for documents responsive to RFP No. 28 and UAS has identified no basis to require additional or

deeper searching." *Id*. at 7.[1] Whether the missing emails and webinar recordings that Schulton copied to his personal computer and cloud account, kept after he left ScholarChip, and later destroyed can be restored or replaced presents a more nuanced question. UAS does not contend that ScholarChip has not kept and did not produce to UAS copies of Schulton's emails or the recorded webinars that Schulton conducted. What cannot be restored or replaced, however, is the precise set of emails and webinar recordings that were taken by Schulton when he left ScholarChip.

## DISCUSSION

Under Rule 37(e), as amended effective 2015, before sanctions may be imposed, a court must find that:

1. electronically stored information

2. that should have been preserved in the anticipation or conduct of litigation

3. is lost because a party failed to take reasonable steps to preserve it and

4. cannot be restored or replaced through additional discovery.

Fed. R. Civ. P. 37(3). These four threshold or predicate conditions have been satisfied. The Private Client List, the ScholarChip emails, and the webinar recordings are all electronically stored information. In March 2016, Shulton anticipated the possibility of litigation. By June 2017, litigation between UAS and ScholarChip had begun. In the fall of 2017, Schulton downloaded to his personal computer and personal cloud account the electronically stored information at issue. On March 7, 2018, with litigation pending between ScholarChip and UAS in federal court in New York, Schulton received a document subpoena, and his first act of

---

[1] UAS's Request for Production No. 28 sought: "All documents and communications relating to Schulton's transfer of his ScholarChip email inbox onto his personal computer and removal(s) therefrom, including any documents and communications relating to Schulton's reasoning for the transfer and removal(s)." ECF 124 at 10 n.10.

spoliation occurred four days later, on March 11, 2018. Schulton's second act of spoliation occurred on April 9, 2018. In August 2018, UAS commenced this lawsuit in federal court in Oregon and requested a TRO, which was scheduled for August 22, 2018. The day before the TRO, Schulton committed his third act of spoliation. The Private Client List, the ScholarChip emails, and the webinar recordings all appear to be relevant to the several lawsuits. Accordingly, they should have been preserved in the anticipation or conduct of litigation. Further, intentionally destroying evidence satisfies the standard for failing to take reasonable steps to preserve that evidence. Finally, UAS has attempted to restore or replace through additional discovery the deleted information but has been unsuccessful. Thus, UAS has satisfied the four threshold elements under Rule 37(e).

Regarding the threshold for sanctions under Rule 37(e)(2), Schulton has admitted facts sufficient to support the conclusion that he acted with the intent to deprive UAS of the information's use in the litigation, at least to the extent of depriving UAS of the ability to prove precisely what Schulton took with him when he left ScholarChip's employment at the end of 2017. During his deposition, Schulton said that he deleted the ScholarChip emails (and presumably the webinar recordings) so he "could legitimately say [he had] no access" to these materials after he left ScholarChip, even though he did have access to those materials, at least until he deleted them. In addition, Schulton testified that he deleted the Private Client List on the day before the TRO hearing "because it's exactly the type of damning information that UAS wants to catch me with." At the minimum, a reasonable factfinder could conclude from these facts that Schulton acted with the intent to deprive UAS of the information's use in litigation.

Further, as noted previously, UAS need not show prejudice under Rule 37(e)(2). *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. Thus, the Court may instruct

the jury that if the jury first finds that Schulton acted with the intent to deprive UAS of the deleted information's use in litigation, the jury may presume the deleted information was unfavorable to Schulton. Fed. R. Civ. P. 37(e)(2)(B). Although the Court will defer ruling on the precise wording of such a jury instruction until either the final pretrial conference in this case or the final instruction conference, the Court intends to provide the jury with a permissive inference spoliation instruction substantially as described above.

## CONCLUSION

Plaintiff University Accounting Service, LLC's Motion for Terminating Spoliation Sanctions Against Defendant Ethan Schulton (ECF 129) is GRANTED IN PART.

**IT IS SO ORDERED**.

DATED this 7th day of June, 2019.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge